UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

IAN HAYLOCK,

                                    Defendant.

19 Cr. 846-6 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

Defendant Ian Haylock, who is currently housed at the Federal Correctional Institution in Otisville, New York ("FCI Otisville"), has applied for (i) compassionate release, in the form of a reduction in sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and (ii) a sentence reduction in light of recent amendments to the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), pursuant to 18 U.S.C. § 3582(c)(2).  The Government opposes both motions.  As set forth in the remainder of this Order, the Court denies Mr. Haylock's motions.

**BACKGROUND**

**A.    Factual Background**

From at least as early as May 2017 through November 2019, the AK Houses Crew (or the "Crew") — a wide-ranging drug organization that operated in and around a Harlem apartment complex known as the "AK Houses" — distributed more than 17 kilograms of crack cocaine.  (Supplemental Presentence Report ("PSR" (Dkt. #381)) ¶¶ 16-19; Dkt. #328 at 1-2).  Mr. Haylock was a street-level crack dealer for the Crew, who engaged in at least nine crack sales between August 14, 2018, and November 14, 2018, all of

which were recorded by undercover New York City Police Department ("NYPD") narcotics officers. (PSR ¶ 36). In addition, Mr. Haylock engaged in three sales of firearms to undercover NYPD officers, all of which were also recorded by the NYPD:

- On October 10, 2018, Mr. Haylock and co-defendant Sharod Bell sold a loaded .22 revolver to an undercover officer.

- The next month, on November 8, 2018, Mr. Haylock again sold a loaded revolver to an undercover NYPD officer.

- A few days later, on November 14, 2018, Mr. Haylock sold a loaded .44 revolver to an undercover NYPD officer.

(*Id.*; *see also id.* ¶¶ 21-23 (discussing several of Mr. Haylock's crack cocaine and firearms sales to undercover NYPD officers)).

## B.    Procedural Background

### 1.    The Indictment and the Arraignment

On November 21, 2019, Mr. Haylock and eleven co-defendants were charged in a two-count sealed indictment. (Dkt. #2). As relevant here, Mr. Haylock was charged in Count One with conspiring to distribute, and to possess with the intent to distribute, 280 grams and more of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; and in Count Two with using, carrying, or possessing a firearm in furtherance of the charged narcotics conspiracy, and aiding and abetting the same, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.

Mr. Haylock was arrested on December 11, 2019, and presented in this District one day later. (Minute Entries for December 11-12, 2019). On January 8, 2020, Mr. Haylock was arraigned before Judge Andrew L. Carter, Jr., to whom the case was originally assigned. (Dkt. #35; Minute Entry for January 8, 2020). On April 15, 2020, the case was reassigned to the undersigned. (Minute Entry for April 15, 2020). Thereafter, the Court held numerous pretrial conferences in the matter, which conferences were largely held telephonically because of the ongoing COVID-19 pandemic. (*See, e.g.*, Dkt. #92, 109, 121, 137, 147, 159 (scheduling orders)).

### 2.    The Guilty Plea

On October 14, 2021, Mr. Haylock entered a plea of guilty to a lesser-included offense of Count One and to Count Two during a conference with the Court that was conducted in part by video and in part by telephone. (Dkt. #198 (transcript of plea proceeding ("Plea Tr."))). The plea was entered pursuant to a written plea agreement with the Government (the "Plea Agreement"). (*See* Plea Tr.; PSR ¶¶ 5-6). In the Plea Agreement, the parties stipulated that Mr. Haylock's sentencing range under the Guidelines was 195 to 228 months' imprisonment, which included a mandatory consecutive term of 60 months' imprisonment on Count Two. (PSR ¶ 6).

During the plea proceeding, the Court began by confirming with Mr. Haylock and his counsel, Allan P. Haber, that Mr. Haylock was waiving his right to have the proceedings take place in person. (Plea Tr. 4-7). It further confirmed that Mr. Haylock wished to plead guilty to the lesser-included

3

offense of Count One of the Indictment, which charged him with a crack cocaine conspiracy that implicated the lower penalties set forth in 21 U.S.C. § 841(b)(1)(C), as well as the Count Two firearms offense. (*Id.* at 7-8, 21-22). The Court then placed Mr. Haylock under oath, and asked him questions to determine his competence to plead guilty. (*Id.* at 7-12). After finding him competent, the Court confirmed with Mr. Haylock that he had reviewed with his counsel the charges to which he proposed to plead guilty, any defenses that he might have to those charges, and the consequences of entering a guilty plea. (*Id.* at 13-14). Mr. Haylock also represented that he was satisfied with Mr. Haber's representation of him in the matter. (*Id.* at 14-15). Thereafter, the Court reviewed with Mr. Haylock the rights that he had, and would be waiving, by entering a plea of guilty. (*Id.* at 15-20).

From there, the Court directed one of the prosecutors to outline for the Court and for Mr. Haylock the elements of the two offenses to which he proposed to plead guilty; at the conclusion, Mr. Haylock confirmed that he understood "that if you were to proceed to trial on these two counts, that is what the government would have to prove at trial[.]" (Plea Tr. 22-25). The Court then reviewed the penalties associated with the offenses, including the relevant mandatory consecutive provision. (*Id.* at 25-28).

The Court next confirmed with Mr. Haylock that he was pleading guilty pursuant to a written plea agreement with the Government, and reviewed with him the terms of that agreement, including its waiver provisions. (Plea Tr. 31-39). Mr. Haylock then allocuted to the narcotics conspiracy and firearms

4

offenses by admitting, among other things, that (i) "in 2017, early 2018, I …
conspired with others to buy and sell crack in the Upper Manhattan," and
(ii) "in 2017, Upper Manhattan, … I sold several handguns to undercover
Agents."  (*Id.* at 40-41; *see also id.* at 44-45 (AUSA: "That's my understanding
as well, that in connection with drug deals, the agent, the undercover agent
periodically had conversations with individuals, including this defendant,
about can I also get a gun and that the guns were sold in connection with the
drug sales."); *id.* at 46 (Mr. Haylock agreeing with prosecutor's recitation)).  At
the end of the proceeding, the Court accepted Mr. Haylock's guilty plea.  (*Id.* at
48-49).

### 3.    The Sentencing

Sentencing for Mr. Haylock took place on September 6, 2022.  (*See* Dkt.
#337 (sentencing transcript ("Sent. Tr.")); Dkt. #331 (judgment)).  As relevant
here, the Government sought an aggregate term of imprisonment of 96 months
(Dkt. #328 at 2),[1] while Mr. Haylock sought a sentence of imprisonment of time
served on Count One (approximately seven days) plus the mandatory
consecutive term of 60 months on Count Two (Dkt. #325 at 3).[2]

---

[1]    Part of the Government's request for a downward variance from the Guidelines came
after, and as a result of, public testimony from the Department of Justice ("DOJ") in
support of the EQUAL Act, S.79, which would eliminate the crack-to-powder-cocaine
sentencing disparity in 21 U.S.C. §§ 841 and 960.  (Dkt. #328 at 5).  The revised
Guidelines range for Count One was calculated using the powder cocaine Guideline,
yielding a range of 108 to 135 months' imprisonment.  (*Id.* at 2).  The remainder of the
Government's request for a non-Guidelines sentence reflected, among other things, Mr.
Haylock's relative culpability in the charged conspiracy, his supportive network of
family and friends, and his efforts at legitimate employment.  (*Id.* at 8-9).

[2]    The defense's bases for a variance included Mr. Haylock's age, his alleged withdrawal
from the conspiracy before its takedown, and his efforts at rehabilitation.  (Dkt. #325 at
1-4).

Counsel for each side was given an opportunity to make an oral sentencing presentation, and Mr. Haylock was permitted to express his thoughts on sentencing through his counsel.  (Sent. Tr. 15-27).  After taking a recess to consider the parties' arguments, the Court then imposed sentence:

> As to Mr. Haylock: I do appreciate the rehabilitative steps that you've made since your arrest, the employment that you've obtained, the concern and focus that you've returned to with respect to your family, and the focus on the stability that your family brings....
>
> Mr. Haber also talked about deterrence in this case and it may be — and it's certainly hoped — that this episode, this prosecution, will bring about specific deterrence for Mr. Haylock, that he will choose not to engage in this conduct again. And there may be some merit to Mr. Haber's arguments about general deterrence and how just the knowledge of the sentence, the fact that Mr. Haylock will have at least a 60-month sentence, is enough.
>
> There are, however, other considerations that I listed a few moments ago, including the nature and circumstances of the offense and the need for respect for the law.  The offense conduct here is quite serious. There are both numerous sales of crack and numerous sales of guns, and they were done in the framework and context of a group that seemed to have a stranglehold on the AK Houses.  Even if Mr. Haylock was not involved in the conspiracy as long as other members, there's an awful lot of criminal conduct, and, indeed, more than I've seen for some of the codefendants in this case.  His involvement, as well, of six months is longer than some cases I have in which a defendant is involved in a one-time transaction.
>
> There's another issue for me to consider in this context, and that is, the concern for not having disparities in sentences among similarly situated defendants.  I took the time that I did in the [robing room] to think about how Mr. Haylock compared with some of the other folks

> I have sentenced and how he differed, and I want to be
> sure that I am keeping that in mind.
>
> I consider the drug sales and the gun sales to be
> different offenses. I have more discretion when it comes
> to the drug sales, but I'm not planning to — and I
> won't — use that discretion to vary all the way down to
> zero months on it. So I am varying downward
> significantly in light of the EQUAL Act, Mr. Haylock's
> lack of criminal history before this, and the steps he's
> taken since his arrest, but I'm varying downward on
> Count One to 24 months, which I'm ordering to be
> followed by a 60-month consecutive term on Count Two.
> I believe that that adequately balances the conduct and
> appropriately contextualizes Mr. Haylock with the other
> defendants in this case and in other cases.

(*Id.* at 30-32).

Mr. Haylock did not appeal from his conviction or sentence. He surrendered to begin serving his sentence on November 28, 2022, and his current projected release date is November 5, 2028.

### 4. The Instant Motions

Mr. Haylock filed a *pro se* motion for compassionate release that was received by the Court on July 20, 2023; while the motion recited that it was brought pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and made claims under that framework, it also requested a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) in light of then-forthcoming amendments to the Guidelines. (Dkt. #373). At or about the same time, Mr. Haylock requested that the Court appoint him counsel to aid him with his motion. (Dkt. #371). The Court appointed Jeremy Schneider to assist Mr. Haylock by order dated August 3,

2023.  (Dkt. #374).[3]  Mr. Schneider filed a counseled supplemental motion on Mr. Haylock's behalf on March 4, 2024.  (Dkt. #380).  Later that month, the Probation Office filed its Supplemental Presentence Investigation Report, in which, as relevant here, it concluded that Mr. Haylock was not eligible for a sentence reduction in light of Amendment 821 to the Guidelines.  (PSR).  The Government filed its opposition to Mr. Haylock's sentence reduction motion on April 3, 2024 (Dkt. #382), and its opposition to Mr. Haylock's compassionate release motion on August 13, 2024 (Dkt. #393).  Mr. Haylock filed his counseled reply on August 27, 2024.  (Dkt. #394).

## DISCUSSION

**A.    The Court Denies Mr. Haylock's Motion for a Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2)**

### 1.    Applicable Law

The Court begins in reverse order, by considering Mr. Haylock's motion for a reduction in sentence, although it appears that this motion may have been abandoned by his counsel in later submissions.  (*See* Dkt. #394 at 2 ("Accordingly, although Mr. Haylock's offense of conviction precludes him from relief from Amendment 821….")).  Title 18, United States Code, Section 3582(c)(2) provides that

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the

---

[3]    The Court extends its thanks to Mr. Schneider for his excellent work on this case.

> term of imprisonment, after considering the factors set
> forth in section 3553(a) to the extent that they are
> applicable, if such a reduction is consistent with
> applicable policy statements issued by the Sentencing
> Commission.

18 U.S.C. § 3582(c)(2); *United States* v. *Martin*, 974 F.3d 124, 136, 139 (2d Cir.

2020).

When presented with a motion to reduce a sentence pursuant to

Section 3582(c)(2), a district court must first "determine the amended guideline

range that would have been applicable to the defendant if [the amendment] had

been in effect at the time the defendant was sentenced." *United States* v.

*Zapatero*, 961 F.3d 123, 127 (2d Cir. 2020) (quoting U.S.S.G. § 1B1.10(b)(1));

*see also Dillon* v. *United States*, 560 U.S. 817, 827 (2010). If the defendant is

eligible for a sentence reduction, "a court may reduce the term of imprisonment

after considering the factors set forth in section 3553(a) and if such a reduction

is consistent with applicable policy statements issued by the Sentencing

Commission," which are contained in U.S.S.G. § 1B1.10. *Martin*, 974 F.3d at

136 (citation omitted). Even when a defendant is eligible for a reduction, "a

sentencing court has discretion to deny a motion to reduce a sentence

pursuant to § 3582(c)(2)." *United States* v. *Brooks*, 891 F.3d 432, 436 (2d Cir.

2018) (addressing a denial to reduce a sentence pursuant to Amendment 782).

Amendment 821 modified the Guidelines in two potentially relevant

respects: Part A amended U.S.S.G. § 4A1.1, by reducing from two points to

one point the upward adjustment for offenders who committed an offense while

under any criminal sentence, and by limiting this adjustment to defendants

who received seven or more criminal history points; it is sometimes referred to as the "status points" adjustment.  Part B, by contrast, amended U.S.S.G. § 4C1.1, by providing a two-level offense level reduction for offenders with zero criminal history points who meet specified eligibility criteria; it is sometimes referred to as the "zero-point offender" adjustment.  The United States Sentencing Commission (the "Sentencing Commission") made Amendment 821 retroactive effective November 1, 2023.

### 2.    Analysis

The Probation Office has determined, and the Court agrees, that Mr. Haylock is ineligible for a reduction in sentence based on the assessment of status points, inasmuch as Mr. Haylock did not receive an enhancement at the time of his sentencing for committing the offenses of conviction while under a criminal justice sentence.  (PSR Supplement 2).  Similarly, while Mr. Haylock did have zero criminal history points at the time of his sentence, the Court agrees with the Probation Office and the Government that Mr. Haylock is disqualified from receiving a two-level reduction in offense level because he sold one or more firearms in connection with the offense.  (*Id.* at 3).[4]   It therefore

---

[4]    *See* U.S.S.G. § 4C1.1(a)(7) (requiring that "the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense").

The Probation Office and the Government also contend that Mr. Haylock is ineligible for a sentence reduction under the "zero-point offender" amendment because he used violence or credible threats of violence in connection with the offenses of conviction. (PSR Supplement 2-3; Dkt. #382 at 2).  Mr. Haylock responds that he did not engage in or threaten violence in any way.  (Dkt. #394 at 2).  Given Mr. Haylock's obvious ineligibility for the reduction because of his firearms sales, the Court need not resolve this factual dispute.

denies Mr. Haylock's motion pursuant to 18 U.S.C. § 3582(c)(2), and considers

his motion under 18 U.S.C. § 3582(c)(1)(A)(i).

## B. The Court Denies Mr. Haylock's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

### 1. Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act,

Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) (the "FSA), a court may

reduce a defendant's sentence upon motion of the Director of the Bureau of

Prisons (the "BOP"), or upon motion of the defendant.  A defendant may move

under Section 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all

administrative rights to appeal a failure of the Bureau of Prisons to bring a

motion on the defendant's behalf or the lapse of 30 days from the receipt of

such a request by the warden of the defendant's facility, whichever is earlier."

*Id.*

When considering an application under Section 3582(c)(1)(A)(i), a court

may reduce a defendant's sentence only if it finds that "extraordinary and

compelling reasons warrant such a reduction," and that "such a reduction is

consistent with the applicable policy statements issued by the Sentencing

Commission."  18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v.

*Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary

order).  The Second Circuit has summarized the standards pursuant to which

district courts must evaluate compassionate release applications:

> A court deciding a compassionate release motion can
> consider "the full slate of extraordinary and compelling
> reasons that an imprisoned person might bring before

11

[it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see* [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)]. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ... correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v.

*Halvon*, 26 F.4th 566, 570 (2d Cir. 2022). The district court's discretion

includes the power to reduce, as well as to eliminate, the remaining term of a defendant's sentence. *See Brooker*, 976 F.3d at 237.

The Sentencing Commission amended the policy statement contained at U.S.S.G. § 1B1.13, effective as of November 1, 2023, in order to provide guidance as to what constitutes extraordinary and compelling circumstances in defendant-initiated (as distinguish from BOP-initiated) compassionate release requests. This amendment "as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release motion, however initiated." *United States* v. *Lopez*, No. 16 Cr. 317-22 (PAE), 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024).

As relevant here, courts may consider the medical circumstances of a defendant, including whether the defendant is (i) "suffering from a serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," or (ii) "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death. U.S.S.G. § 1B1.13(b)(1)(B)-(C). The amended policy statement also recognizes that family circumstances may constitute extraordinary and compelling reasons, as, for example, "[t]he death or incapacitation of the caregiver of the defendant's minor child," or similar circumstance in which the defendant becomes the "only available caregiver" for an immediate family member. *See id.* § 1B1.13(b)(3).

In addition to the listed factual circumstances, the amended U.S.S.G. § 1B1.13 contains a catch-all provision that allows consideration of "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Finally, while the amended policy statement confirms that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement," it notes that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* § 1B1.13(d).

As suggested by *Keitt*, the "existence of 'extraordinary and compelling reasons' for a reduction does not mean that a district court must release the defendant." *United States* v. *Madoff*, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020). Even if a court finds that a defendant has established an extraordinary and compelling reason for a reduction in sentence, it still must then consider the Section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A)(i). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

2.    **Analysis**

a.    **Mr. Haylock Has Not Demonstrated an Extraordinary and Compelling Reason**

The record is unclear as to whether Mr. Haylock has exhausted his administrative remedies.  In his supplemental submission, defense counsel acknowledged that "it appears Mr. Haylock may not have successfully exhausted his administrative remedy by first petitioning the BOP for his requested relief."  (Dkt. #380 at 6).  Mr. Haylock noted that the requirement was not jurisdictional, and could be waived or forfeited by the Government, but the Government invoked the failure as a basis to deny the motion.  (Dkt. #393 at 1, 5).  *See United States* v. *Jackson*, No. 21 Cr. 537 (LTS), 2024 WL 4215741, at *2 (S.D.N.Y. Sept. 17, 2024) (denying compassionate release without prejudice based on failure to exhaust).

In his counseled reply submission, Mr. Haylock details his earlier efforts at submitting his administrative request to the Warden at FCI Otisville, as well as what he claims to be actions on the part of prison staff to stymie those efforts.  (Dkt. #394 at 2).  Separately, Mr. Haylock claims to have emailed his request to the Warden on August 22, 2024.  (*Id.*).  The BOP has advised the Court that it has no record of receiving Mr. Haylock's request.  On this record, the Court will assume without deciding that Mr. Haylock has exhausted his administrative requirements based on the August 22 email, and thus proceeds to consider whether Mr. Haylock has identified "extraordinary and compelling reasons" warranting his release, ultimately concluding that he has not.

To begin, Mr. Haylock argues that his age at the time of the offense conduct amounts to an extraordinary and compelling reason for compassionate release.  (Dkt. #380 at 3-4; Dkt. #394 at 2-4).  The amended U.S.S.G. § 1B1.13 does not list youth among its list of suggested extraordinary and compelling reasons, although in certain circumstances it may fall within the catch-all provision in that section.  As it happens, in the Guidelines amendments that became effective November 1, 2024, the Sentencing Commission amended the policy statement at U.S.S.G. § 5H1.1 to note that "[a] downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses."  U.S.S.G., Amendment 829.  At this time, however, Amendment 829 has not been made retroactive, and according to U.S.S.G. § 1B1.13,

> Limitation on Changes in Law. — Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

U.S.S.G. § 1B1.13(c).

In a prior decision issued without consideration of Amendment 829, this Court surveyed the relevant case law and concluded that "[t]hough the Second Circuit has not specifically opined on the issue, courts within the Second

Circuit have accepted, and rejected, youth as a valid basis for a sentence reduction under § 3582(c)(1)(A)(i)." *United States* v. *Rosario*, No. 96 Cr. 126-23 (KPF), 2024 WL 3521851, at *7 (S.D.N.Y. July 24, 2024) (collecting cases). The Court also found that a "common theme among those courts that have allowed reductions on the basis of youth is that the offenses of conviction were 'split-second' and 'hot-headed.'" *Id.* at *7 (quoting *United States* v. *Ramirez*, 571 F. Supp. 3d 40, 48-49 (S.D.N.Y. 2021)); *see also United States* v. *Delvalle*, No. 17 Cr. 314 (VM), 2024 WL 3934989, at *4 (S.D.N.Y. Aug. 23, 2024) ("Courts in this District have denied similar motions for compassionate release based on the defendant's age, where the defendant's actions were calculated and deliberate and not the product of duress." (collecting cases)). Mr. Haylock's offense conduct in this case, by contrast, did not implicate "high-pressure, time-sensitive, emotional contexts." *United States* v. *Golding*, No. 05 Cr. 538 (JSR), 2022 WL 2985014, at *3 (S.D.N.Y. July 27, 2022) (internal citations omitted).

For avoidance of doubt, and on the chance that the Sentencing Commission may later make Amendment 829 retroactive or add youth to the factors listed in U.S.S.G. § 1B1.13, this Court concludes that, on this record, Mr. Haylock's age does not constitute an extraordinary and compelling reason warranting a further sentence reduction. For starters, unlike many defendants who appear before the Court, Mr. Haylock grew up in a stable household with an intact family structure. (PSR ¶¶ 70-71). In addition, the conduct at issue persisted over a period of years, between the ages of 21 and 24, which is a far cry from age range of the *Ramsay* case on which Mr. Haylock relies. (Dkt.

#380 at 7 (citing *United States* v. *Ramsay*, No. 96 Cr. 1098 (JSR), 2021 WL 1877963, at *1 (S.D.N.Y. May 11, 2021))).  Finally, and most importantly, this Court already took Mr. Haylock's age into consideration in imposing a substantially-below-Guidelines sentence.

Separately, Mr. Haylock argues that certain of his current medical conditions — including asthma, chronic sinusitis, chronic migraines, and an abnormal liver function test — warrant compassionate release.  (Dkt. #380 at 4-5).  The Court has reviewed with care medical records obtained from the BOP concerning Mr. Haylock's treatment while in BOP custody.  On the whole, the Court believes that the BOP has responded promptly and appropriately to Mr. Haylock's medical conditions.  More to the point, the Court finds that Mr. Haylock has demonstrated neither that he is suffering from a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," nor that he is a "suffering from a medical condition that requires long-term or specialized medical care that is not being provided."  U.S.S.G. § 1B1.13(b)(1).

In his initial *pro se* motion, Mr. Haylock argued that he was the "sole support financially, emotionally and medically for his infant child and the mother of his child."  (Dkt. #373 at 2).[5]  It is unclear whether he continues to pursue this basis for compassionate release; to the extent he does, the Court rejects his argument.  "The animating principle of [U.S.S.G. § 1B1.13(b)(3)] is

---

[5]    The Court understands that Mr. Haylock has a long-term partner and two minor children.  (PSR ¶ 72).

that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself and for whom the defendant would be the only available caregiver." *United States* v. *Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020). And while courts have granted compassionate release motions predicated on family circumstances, the evidence of the defendant's criticality to the preservation of the family unit in those cases is far more substantial than that presented here. *See, e.g.*, *United States* v. *Messina*, No. 11 Cr. 31 (KAM), 2024 WL 2853119, at *6 (E.D.N.Y. June 4, 2024) (collecting and distinguishing cases in which motions were granted because of family circumstances). Although the Court is sympathetic to Mr. Haylock's situation, the record before the Court does not establish that he is the only available caregiver for his children. *See United States* v. *Lindsey*, No. 13 Cr. 271 (LTS), 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) ("[C]ourts generally required a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions, before concluding that an extraordinary and compelling reason has been established." (citation omitted)).

Finally, Mr. Haylock suggests that his rehabilitative efforts in prison warrant compassionate release. (Dkt. #380 at 2-3; Dkt. #394 at 4). To review, rehabilitation is not, by itself, sufficient to constitute an extraordinary and compelling circumstance, but "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of

imprisonment is warranted." U.S.S.G. § 1B1.13(d); *see also* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Here, the Court finds that Mr. Haylock's proffered bases for relief do not amount to extraordinary and compelling circumstances, and will not grant his motion based on his rehabilitation alone. *Cf. United States* v. *Muyet*, No. 95 Cr. 941 (LAP), 2024 WL 2830825, at *5 (S.D.N.Y. June 3, 2024) ("Simply put, the evidence of rehabilitation offered by Defendant does not, alone or in combination with all other relevant considerations, establish extraordinary and compelling reasons for a reduction in his sentence."); *United States* v. *Raposo*, No. 98 Cr. 185 (JPC), 2024 WL 165195, at *9 (S.D.N.Y. Jan. 16, 2024) ("And given the Court's findings that [the defendant's] other arguments do not constitute extraordinary and compelling reasons, even evidence of complete rehabilitation cannot suffice.").

### b. The Section 3553(a) Factors Counsel Against a Reduction in Sentence

Even were the Court to have found that any of Mr. Haylock's proffered bases for compassionate release amounted to "extraordinary and compelling," it would still deny his motion after considering the factors set forth in 18 U.S.C. § 3553(a). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C). For a period of years, the

AK Houses Crew kept a stranglehold over an entire community. Mr. Haylock was a critical member of the Crew, selling both guns and drugs on numerous occasions in the neighborhood. At sentencing, the Court varied downwardly significantly, acknowledging Mr. Haylock's relative culpability, rehabilitative efforts, and strong base of support. A further reduction in sentence would contravene the Section 3553(a) factors that this Court strove so carefully to balance at the original sentencing.

## CONCLUSION

For the foregoing reasons, Defendant Ian Haylock's motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) are DENIED. The Clerk of Court is directed to terminate the motions at docket entries 43, 371, 373, and 380, all of which were resolved by this Order or by prior orders entered in the case.

SO ORDERED.

Dated:    November 6, 2024
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

21